UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BARBARA ELIANE ROBBINS,               )
                                      )
        *Plaintiff*,                   )        No. 1:15-cv-247-SKL
                                      )
v.                                    )
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
        *Defendant*.                   )

## MEMORANDUM AND ORDER

Plaintiff Barbara Eliane Robbins ("Plaintiff") brought this action pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of

Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits

("DIB") and supplemental security income ("SSI"). Each party has moved for judgment on the

administrative record and summary judgment [Docs. 17 & 19] and has filed a memorandum in

support of their respective motions [Docs. 18 & 20]. This matter is now ripe. For the reasons

stated below, Plaintiff's motion for judgment on the administrative record [Doc. 17] will be

**DENIED**; the Commissioner's motion for summary judgment [Doc. 19] will be **GRANTED**;

and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her current applications for DIB and SSI on August 28, 2012, alleging

disability beginning August 12, 2012[1] (Transcript [Doc. 12] ("Tr.") 156-166). Plaintiff's claims

were denied initially and upon reconsideration, and she requested a hearing (Tr. 105-111, 112,

---

[1] Although Plaintiff alleges her disability began on August 12, 2012, she describes the primary
source of her back pain as beginning in 2006 when she was injured on the job by lifting a car
battery and five gallon buckets which resulted in a pop in her back and subsequent low back pain
and a worker's compensation claim (Tr. 30-31, 219, 400); [Doc. 18 at Page ID # 604, 614; Doc.
20 at Page ID # 624, 631]. Plaintiff reported an additional prior worker's compensation injury to
her left leg in 1999 (Tr. 400).

116-120, 121-124). The administrative law judge ("ALJ") held a hearing on July 31, 2014, during which Plaintiff was represented by an attorney (Tr. 26-50). The ALJ issued a decision on September 23, 2014, finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") and finding Plaintiff has retained the residual functional capacity ("RFC") to perform sedentary work with additional restrictions (Tr. 9-21). Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision, the Appeals Council denied Plaintiff's request, and the ALJ's decision became the final, appealable decision of the Commissioner (Tr. 1-5). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1965 and originally alleged disability beginning at age 46 due to neck and back problems and migraines (Tr. 19, 53, 56, 60, 62, 65, 68, 73, 79-80, 89, 199, 345-46, 372-73, 388, 448-49). Additional alleged impairments include fibromyalgia, anxiety, diabetes mellitus, and hypertension (Tr. 11-13, 79, 95-96, 345, 347, 531-537). Plaintiff was 48 years old on the date of her administrative hearing (Tr. 29). She can communicate in English, obtained her GED in 1993 (Tr. 19, 30, 198-200), and has past work as a delivery person in connection with medical deliveries, as a general laborer in a production facility, as a merchandise supervisor and merchandiser in retail stores, as a fast food restaurant worker, and for a short stint as a customer service representative (Tr. 69, 87, 200, 224, 400).

### B. Medical Records

The administrative record contains extensive medical records which have been summarized by the parties and the ALJ that need not be summarized again herein. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the analysis below, but all relevant records have been reviewed.

2

## C.    Hearing Testimony

At the July 31, 2014 hearing, Plaintiff testified (Tr. 28-45).  In addition, a vocational expert ("VE") testified (Tr. 45-49).  While the Court has carefully reviewed the transcript of the testimony at the hearing, it is not necessary to summarize all of the testimony herein.  As needed, portions of the testimony will be addressed within the respective sections of the analysis below.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

Applying the five-step process, the ALJ made the following findings (Tr. 9-21). At step one, the ALJ found Plaintiff had not engaged in any substantial gainful activity since the alleged disability onset date, August 12, 2012 (Tr. 11). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine (post fusion surgery) and cervical spine, left lumbar radiculitis, cervicogenic headaches, and anxiety disorder (Tr. 11). The ALJ further found Plaintiff's alleged impairments of hypertension and diabetes mellitus were not severe as they both could be controlled with nutrition and medication, records showed no evidence of any end organ damage from either alleged impairment, and they caused no more than minimal limitations on Plaintiff's "ability to perform basic work activity" (Tr. 11-12). The ALJ determined that fibromyalgia was not a medically determinable impairment since the evidence was not sufficient to support the requirements under Social Security Ruling ("SSR") 12-2p, particularly as to the number and location of trigger points upon physical examination and evidence that other disorders were not causing Plaintiff's fibromyalgia symptoms (Tr. 12).

4

At step three, the ALJ states Plaintiff's representative did not specifically make the assertion that Plaintiff meets or equals any listing-level impairment and the ALJ found no evidence that Plaintiff has any impairment or combination of impairments to meet or medically equal the severity of one of the listed disabling impairments listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 12). The ALJ next determined Plaintiff had the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant requires a sit/stand option at about 30-minute to 1-hour intervals; however, no assistive device is required for ambulation. The claimant can do no climbing of ladders, ropes, or scaffolds. She can occasionally perform postural activities including balancing, stooping, kneeling, crouching, and crawling. She can use her hands frequently for handling, fingering, and feeling. She should avoid concentrated exposure to hazards such as unprotected heights, moving machinery, etc. The claimant is further limited to simple, routine, repetitive tasks, and she must have only occasional contact with the public, co-workers, and supervisors.

(Tr. 13-14). At step four, the ALJ found Plaintiff has no past relevant work (Tr. 19). At step five, taking into consideration the claimant's age, education, work experience and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("Grids"), as a framework for his decision and considering the testimony of a VE, the ALJ found Plaintiff was capable of performing jobs that exist in significant numbers in the national economy such as table worker, hand mounter, and inspector/checker (Tr. 19-20). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from August 12, 2012 through the date of the ALJ's decision (Tr. 20-21).

## IV.    ANALYSIS

Plaintiff alleges the ALJ erred (1) by failing to provide good reasons for rejecting the opinion of her treating physician, Dr. Scott D. Hodges; (2) by failing to find that Plaintiff's impairments meet or medically equal one of the listings, more specifically Listing 1.04A; (3) by

5

making a credibility determination that is not supported by substantial evidence; and (4) by finding that Plaintiff can perform a range of sedentary work which Plaintiff argues is not supported by substantial evidence.

### A.    Standard of Review

A court must affirm unless the Commissioner's decision rests on an incorrect legal standard or is not supported by substantial evidence.   42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court, however, may not consider any evidence that was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is

6

under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.     Listing 1.04A Issues**

Plaintiff argues that the proof is compelling and supports a finding that she suffers from an impairment or a combination of impairments that meets or medically equals Listing 1.04 in 20 C.F.R. pt. 404, subpt. P, app. 1 of the Listing of Impairments. Plaintiff contends that she has met the criteria for Listing 1.04A since at least October 5, 2010 when Dr. Hodges, her treating orthopedist, noted positive straight leg raising during his examination. Plaintiff further contends that the ALJ erred by not considering Dr. Hodges's October 5, 2010 diagnosis when discussing his finding that Plaintiff's back impairment did not meet or medically equal Listing 1.04A.

Defendant argues that Plaintiff did not meet her burden of proving her impairments met or medically equaled the requirements of a listing. Defendant also contends that the ALJ properly determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of any listed impairment, including Listing 1.04.

Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listings 1.04A by pointing to specific medical findings that satisfy all of the criteria of the listing. *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014). Although Plaintiff was diagnosed with a degenerative disc disease, "a diagnoses alone does not establish that a claimant's impairments meet or medically equal a listed

impairment." *Id.*; *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."). An impairment that satisfies only some of the criteria does not qualify regardless of severity. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 1.04 provides that:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.

Plaintiff argues that a November 1, 2012 magnetic resonance imaging ("MRI") of her lower back reveals "a degenerative disc disease diagnosis with nerve root involvement," thus meeting the first criteria of Listing 1.04 [Doc. 18 at Page ID # 612]. Additionally, Plaintiff argues that, during an October 5, 2010 examination, Dr. Hodges noted that she had "a positive sitting straight leg raising sign on the left" (Tr. 376). As Defendant correctly argues, Plaintiff points to no other medical findings to support her assertion that her back impairment meets or medically equals the requirements of Listing 1.04A. Rather, Plaintiff argues that the evidence is compelling and remand is appropriate because the ALJ did not explicitly discuss Dr. Hodges's October 2010 finding in his discussion of Listing 1.04A.

In his opinion, the ALJ discussed the requirements of Listing 1.04A and determined the record did not support a finding that Plaintiff met or medically equaled Listing 1.04A as follows:

Listing l.04A requires evidence of a specified spinal disorder, nerve root or spinal cord compromise, and evidence of "neuro-anatomic distribution of pain, limitation of motion in the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," [sic] and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." The record is contrary of such evidence with multiple physical examinations showing negative straight leg raise, along with diagnostic studies showing no more than mild degenerative disk disease (Exhibits 3F, pp. 2-3, 8-9, and 15-16; and 6F, pp. 2-3 and 5). The record also does not support spinal arachnoiditis (l.04B) or lumbar spinal stenosis resulting in pseudoclaudication (l.04C) (Exhibits 3F, 5F, 6F, and 16F).

(Tr. 12).

The ALJ's finding concerning Listing 1.04A is supported by substantial evidence in the record. Plaintiff's alleged disability commenced August 12, 2012 (Tr. 11, 156, 158). An October 2008 MRI scan showed lower lumbar spondylosis unchanged from the previous exam (Tr. 398, 404). On October 5, 2010 and on October 28, 2010, Plaintiff had positive sitting straight leg raise testing on the left (Tr. 372, 376). The straight leg raise testing was performed in the sitting position and was only positive on the left. Listing 1.04 requires that the straight leg raise testing be positive in both the sitting and supine positions. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. Additionally, Dr. Hodges operated on Plaintiff's lumbar spine in December 2010 (Tr. 17, 431-33). Following surgery, Plaintiff had negative sitting straight leg raise testing in February 2011, June 2011, August 2011, February 2012, and May 2012 (Tr. 350, 354, 356, 357, 363). In July 2012, while Dr. Hodges noted decreased range of motion in Plaintiff's lumbar spine as her forward flexion was 80 degrees with extension of 40 degrees, he also noted that her sitting straight leg raise testing was negative and she had full motor strength in her lower extremities (Tr. 341).

While Dr. Hodges again noted during a September 24, 2012 examination that Plaintiff had decreased range of motion in her lumbar spine with forward flexion of 60 degrees and extension of 30 degrees, he also noted that her sitting straight leg raise testing was negative and she had full motor strength in her lower extremities (Tr. 451). Additionally, during examinations on August 24, 2012 and November 19, 2012, it was noted that Plaintiff's sitting straight leg raising test was negative (Tr. 448, 453). An MRI scan taken on November 1, 2012 indicated a new left lateral disc protrusion at L4-5, contacting the left L5 nerve root origin, but there was no evidence of disc extrusion (Tr. 448-49). In March 2013, Kathryn Galbraith, Ph.D., the state's psychological consultative examiner, observed and noted in her report that Plaintiff had a normal posture and displayed a normal gait (Tr. 465). In August 2013, Dr. Hodges completed a lumbar spine RFC questionnaire form, and while he checked the box that Plaintiff had reduced range of motion, he did not check the boxes that she had any positive straight leg raising test, sensory loss, reflex changes, muscle atrophy, or muscle weakness (Tr. 478).

While Plaintiff had two instances of positive sitting straight leg testing on the left in 2010, which was approximately two years before her alleged disability onset date, and two instances of limited range of motion, only one of which was during the relevant period, the evidence as a whole does not support a finding that Plaintiff meets or equals the requirements of Listing 1.04A for a continuous 12 month period. *See* 20 C.F.R. §§ 404.1525(c)(4) & 416.925(c)(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). During the relevant time period from August 12, 2012 through the date of the ALJ's decision, neither party has pointed to any medical evidence in the record that Plaintiff had positive straight leg raise testing. Additionally, as Defendant points out, during the relevant period, the record only supports a single positive examination noting limited motion of the spine and no evidence of motor loss or sensory or reflex loss. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x

10

733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles that might be buried in the record.") (internal citation and quotation marks omitted); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that a district court is neither required to speculate on which portion of the record a party relies, nor is it obligated to "wade through" the record for specific facts). As the regulations require Plaintiff to show that she meets or medically equals the requirements of a listing for a continuous period of at least 12 months, the ALJ properly found that Plaintiff's low back impairment did not meet or medically equal the requirements of Listing 1.04 (Tr. 12).

Plaintiff also argues that the ALJ erred by not discussing Dr. Hodges's October 2010 findings of positive straight leg raise testing. Contrary to Plaintiff's position, there is no requirement that the ALJ must discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)) (stating that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence"). Nevertheless, in order to affirm a decision which omits some significant evidence, the reviewing court must be able to discern that the ALJ "consider[ed] the evidence as a whole and reach[ed] a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, No. 09-6058, 2010 WL 3927043, at *4 (6th Cir. Sep. 30, 2010). Here, the ALJ considered the record as a whole and there is substantial evidence to support the ALJ's determination that Plaintiff's back impairment did not meet the requirements of Listing 1.04A. *See Heston*, 245 F.3d at 535 ("The court may review Dr. Haun's report, in its consideration of the record as a whole, to determine if the ALJ's decision was based upon substantial evidence, even if the ALJ failed to cite the report in its conclusion.").

The two positive sitting straight leg raise testing on the left that Dr. Hodges noted in October 2010 were made approximately two years prior to Plaintiff's alleged disability onset

11

date and, based on the entire record, do not support a determination that Plaintiff has met the requirements of Listing 1.04A for a continuous 12 month period. Instead, the ALJ discussed the evidence of multiple examinations showing negative straight leg raise testing along with diagnostic studies that showed no more than mild degenerative disc disease (Tr. 12, 339-40, 345-46, 352-53, 448-49, 451).

The Court **FINDS** that there is substantial evidence in the record to support the ALJ's determination that Plaintiff's impairments do not meet or equal the requirements of any listing, including the requirements of Listing 1.04A.

### C.    RFC Issues

Plaintiff contends the ALJ's RFC determination that she "can perform a range of sedentary work is not supported by substantial evidence" in the record [Doc. 18 at Page ID # 607, 615]. A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)); *see also* 20 C.F.R. § 404.1527(b). The ALJ must determine which medical

findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). A court will not disturb an ALJ's RFC determination as long as the finding is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The ALJ determined Plaintiff had the RFC to perform sedentary work except he found Plaintiff requires a sit/stand option at about 30-minute to one-hour intervals but requires no assistive device for ambulation (Tr. 13).[2] The ALJ also found that Plaintiff could not climb ladders, ropes, or scaffolds; could occasionally perform postural activities including balancing, stooping, kneeling, crouching, and crawling; could use her hands frequently for handling, fingering, and feeling; and should avoid concentrated exposure to hazards such as unprotected heights and moving machinery (Tr. 13). The ALJ further determined that Plaintiff is limited to simple, routine, repetitive tasks and must have only occasional contact with the public, co-workers, and supervisors (Tr. 13-14).

Plaintiff contends that the ALJ erred in making his RFC determination by not properly evaluating Plaintiff's subjective complaints. Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to give good

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) & 416.967(a).

reasons for rejecting the opinions of her treating physician Dr. Hodges. As a result, Plaintiff argues that the ALJ's decision that she "can perform a range of sedentary work is not supported by substantial evidence" [Doc. 18 at Page ID # 607, 615].

### 1. Subjective Symptom Evaluation and Determination

The ALJ considered Plaintiff's subjective complaints and alleged limitations and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible and there was insufficient evidence to support the severity of Plaintiff's symptoms to the extent alleged (Tr. 17-19). Plaintiff agrees that the ALJ properly "invoked the rubric" for evaluating Plaintiff's subjective complaints of her pain and impairments [Doc. 18 at Page ID # 613]. Plaintiff also states that "the ALJ is correct in that the Plaintiff's subjective allegations of pain do not correspond to objective evidence"; however, Plaintiff contends that pain alone can establish a disability and may not be disregarded solely because the pain is unsubstantiated by objective medical evidence [*id.* at Page ID # 615]. Plaintiff contends that her pain is corroborated by her statements, her treating physician's assessments, and by numerous medical reports [*id.*].

An ALJ's credibility analysis[3] is "inherently intertwined" with the RFC assessment. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at \*10 n.7 (E.D. Tenn. May 18, 2016) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")). Pain symptoms can be difficult to quantify so the determination is often influenced by a plaintiff's credibility. *See Hickey-Haynes v. Barnhart,* 116 F. App'x. 718, 726-27 (6th Cir. 2004); *see also* SSR 16-3p, 2016 WL 1119029. An ALJ may take a plaintiff's credibility into account when making a determination regarding the severity of pain complaints. *See Hickey-Haynes,* 116 F. App'x at 726-27; *see also Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011) (ALJ's finding that treating physician's opinion was based on subjective complaints rather than objective evidence was "simply inaccurate" where the treating physician was a pain management specialist, because "pain is by definition a somewhat subjective matter."). There is no requirement that an ALJ must accept a physician's or plaintiff's allegation of a disabling level of pain without critical review. To the contrary, "[a]lthough the treating physician's assessment can

---

[3] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at \*1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, more than a year after the ALJ issued his decision on September 23, 2014. Moreover, SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter. As such, it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at \*5 n.1 (6th Cir. July 28, 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, the Court will occasionally refer to the ALJ's analysis using the same term.

provide substantial input into this credibility determination, ultimately, the ALJ must decide . . . if the claimant's pain is so severe as to impose limitations rendering [him] disabled." *Dunn v. Comm'r of Soc. Sec., No.* 1:15-CV-176, 2016 WL 4194131, at *7 (S.D. Ohio July 15, 2016), *report and recommendation adopted*, No. 1:15-CV-176, 2016 WL 4179586 (S.D. Ohio Aug. 8, 2016) (quotation marks, alterations and citation omitted).

The determination of Plaintiff's credibility as to his allegations of disabling pain is left to the ALJ and is generally binding on the reviewing court if supported by substantial evidence. An ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones*, 336 F.3d at 476.

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

16

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citation omitted).

Here, the ALJ determined that Plaintiff's pain complaints were not entirely credible because they were inconsistent with the objective medical evidence and also because of Plaintiff's minimal and conservative treatment, Plaintiff's improvement with treatment, Plaintiff's daily activities, and the medical opinions (Tr. 14-19). In his decision, the ALJ discussed Plaintiff's MRI scans, progress notes, physical examination findings, diagnoses, electrodiagnostic studies, pain management records, and laboratory results (Tr. 17-18). The ALJ explained how this objective medical evidence did not support the severity of symptoms as alleged by Plaintiff (Tr. 17). For example, the MRI scans around June 2012 were unremarkable for Plaintiff's right shoulder and showed a mild disc bulge at C6-7 without herniation or stenosis, no impingement on right C6 nerve root, minimal disc degeneration at C6-7, and mild left uncovertebral hypertrophy at C3-4 without stenosis (Tr. 17, 352-53). In August 2012, electrodiagnostic studies revealed no evidence of peripheral neuropathy of the bilateral lower extremities, and EMG testing was normal (Tr. 17, 339-40). An ALJ may properly discount Plaintiff's allegations of the severity of her pain when Plaintiff's allegations are inconsistent with the objective medical evidence in the record. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013).

While Plaintiff complained of neck pain, right shoulder pain and headaches in June 2012, her medications were conservative consisting of Lisinopril for hypertension and over-the-counter ibuprofen for pain (Tr. 17, 345). One day after Plaintiff's alleged onset date, Plaintiff complained of back pain, bilateral hip pain, and bilateral leg pain and weakness (Tr. 17, 339). Records document additional medications of Flexeril and Tramadol (Tr. 17, 339). It was

17

recommended that Plaintiff engage in aquatics therapy three times a week for four weeks (Tr. 17, 340). On August 15, 2012, Plaintiff received an epidural steroid injection at C6-7 from treating physician Dr. Ball. (Tr. 17, 435). As Defendant points out, the ALJ properly considered the fact that Plaintiff received only minimal and conservative treatment for her alleged disabling pain. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations"); *Rudd,* 531 F. App'x at 727 ("The ALJ's finding [that the claimant has the physical RFC for the full range of light work] is supported by the evidence in the record that his treatment was minimal and conservative during the period at question . . . .").

Plaintiff counters that she attempted to alleviate her pain with steroid injections, powerful prescription narcotics, and surgery, all of which failed to relieve her symptoms [Doc. 18 at Page ID # 614]. The ALJ acknowledged these treatments but found that, since her fusion surgery in December 2010, the medical records show that Plaintiff's treatment has been essentially routine and/or conservative (Tr. 19). While Plaintiff testified during her administrative hearing that Dr. Hodges wanted to perform another surgery (Tr. 34), the ALJ noted that there were no medical records of treating physicians recommending additional surgery for Plaintiff's back condition (Tr. 19). Additionally the ALJ commented that the record reflected little treatment for anxiety with no treatment from a mental health specialist or facility (Tr. 19). The ALJ also took into consideration the fact that there were significant gaps in the record for Plaintiff's treatment from November 2012 through April 2014, which the ALJ determined suggested Plaintiff's impairments were not severe enough to seek even emergency room treatment (Tr. 19).

Plaintiff contends that she was "essentially prevented from additional treatment after her employment was terminated and worker's compensation insurance stopped paying for treatment with *Dr. Hodges*" [Doc. 18 at Page ID # 614 (emphasis in original)]. The ALJ considered and found that "[e]ven accepting the lack of financial resources [Plaintiff] alleges, . . . a more diligent attempt to obtain treatment for her impairments could have been made" (Tr. 19). The ALJ noted that pharmacies provide prescriptions at reduced rates and the Affordable Care Act implemented in October 2013 provides access to insurance, possibly at subsidized rates, and without denial for pre-existing conditions (Tr. 19). Plaintiff has pointed to no evidence in the record that she attempted to obtain treatment and was denied or to obtain prescriptions at reduced or subsided rates (Tr. 19). Thus, the ALJ gave little weight to Plaintiff's allegations regarding lack of resources (Tr. 19).

The ALJ also considered the evidence in the record that indicated treatment was effective in improving Plaintiff's condition, which undermined Plaintiff's allegations and testimony that medicine did not relieve her pain. The ALJ noted that in April 2011 Plaintiff rated her pain as two to three on a 10-point scale and told Dr. Hodges that the Lortab medication was effective in controlling her pain (Tr. 14, 359). She also repeatedly told Dr. Hodges after her December 2010 back surgery that she experienced a 50% improvement (Tr. 14, 356, 357, 359, 363). The ALJ recognized that in June 2012 Plaintiff's medications included Lisinopril for hypertension and over the counter ibuprofen for pain, which Plaintiff stated was effective in controlling her pain (Tr. 17, 345, 347). Plaintiff also took Flexeril as needed (Tr. 347). In September 2012, after her alleged onset date of disability, Plaintiff told Dr. Hodges that her medication was effective in controlling her pain (Tr. 451). The ALJ recognized that there was no evidence of specialized orthopedic or pain management therapy after November 2012 (Tr. 18). The records indicate that

the next time Plaintiff sought treatment was in April 2014 for her non-severe impairments of hypertension, skin rash, and new onset of diabetes mellitus (Tr. 18, 531-37).

An ALJ may consider the impact of a claimant's treatment on her alleged symptoms as a factor in determining a claimant's credibility. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (allowing the ALJ to consider the effectiveness of medications to control symptoms). In addition, evidence that a claimant's symptoms improve with treatment will support a finding of not disabled. *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (holding that evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)); *see also Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800 n.3 (6th Cir. 2004) (affirming the ALJ's finding of not disabled in part because the claimant's conditions were controlled with treatment).

The ALJ also noted that Plaintiff's activities of daily living were not as limited as one would expect given Plaintiff's complaints of disabling symptoms and limitations (Tr. 18). An ALJ may properly consider daily activities as one factor in the evaluation of subjective complaints. *See Temples*, 515 F. App'x at 462. During the administrative hearing in July 2014, Plaintiff testified that she was "in pain constantly every single day" (Tr. 33). The ALJ discussed that, in Plaintiff's September 4, 2012 adult function report, she indicated she lived in a house alone, cared for a pet dog, could prepare simple meals, could do laundry, was able to go out alone and drive a car, could shop in stores, could handle financial affairs, and used no assistive device except for glasses (Tr. 18, 211-14, 217). Plaintiff further indicated that she had difficulty putting on pants and shoes at times and did not shave her legs or wash her hair daily because of her chronic pain (Tr. 18, 212). However, in a subsequent function report dated December 13,

20

2012, Plaintiff indicated that she lived with friends and had no problems caring for her hair or shaving (Tr. 18, 240-41).

The Plaintiff is, in essence, asking the Court to weigh the subjective symptom evaluation evidence differently than the ALJ did. Contrarily, the Court **FINDS** the ALJ appropriately considered Plaintiff's subjective allegations of disabling pain and there is substantial evidence in the record to support the ALJ's determination. As a result, the Court must defer to the ALJ's "credibility" determination even if there is substantial evidence in the record to support an opposite determination. *See Smith*, 99 F.3d at 782 (stating that "even if the district court—had it been in the position of the ALJ—would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ" where substantial evidence supported the ALJ's decision).

## 2. Treating Physician's Opinion Determination

Plaintiff contends the ALJ failed to provide good reasons for rejecting the opinions of Dr. Hodges, Plaintiff's treating physician. Defendant counters that the ALJ properly considered the medical opinion evidence in conjunction with other relevant evidence to determine Plaintiff's RFC and gave good reasons for not giving Plaintiff's treating physician's opinions controlling weight.

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original) (internal question marks omitted). To

21

determine whether substantial evidence is inconsistent with the treating source's opinion, "the ALJ must examine the record as a whole, 'not just medical opinions.'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628-29 (6th Cir. 2016) (citing *Hickey-Haynes*, 116 F. App'x at 723-24). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the ALJ must give "good reasons" for the weight he accords the treating source opinion, applying factors such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 193 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

Plaintiff's treating physician Dr. Hodges submitted two assessments regarding Plaintiff's ability to work – one in April 2011 and the other in August 2013. The ALJ determined that Dr. Hodges's opinions were not entitled to controlling weight and after considering regulatory factors provided good reasons for affording Dr. Hodges's opinions only partial weight (Tr. 14-15).

In April 2011, Dr. Hodges opined that, based on a functional capacity evaluation conducted on March 31, 2011, Plaintiff had reached maximum medical improvement and that she could lift no greater than 20 pounds frequently and 40 pounds occasionally and could not push or pull more than 50 pounds occasionally and 25 pounds frequently (Tr. 14, 359-60). Dr. Hodges described Plaintiff's impairment as Grade E, which would place Plaintiff at a 9% impairment rating to the body as a whole (Tr. 14, 360). During that office visit, Plaintiff rated her pain as a 2 to 3 on a scale of 0 to 10 and felt a 50% overall improvement since her back surgery which was performed five months previously in December 2010 (Tr. 14, 359). Plaintiff

22

was taking Lortab, which was noted as being effective in controlling her pain (Tr. 14, 359). Dr. Hodges determined that Plaintiff could return to work four days after her visit (Tr. 360). The ALJ noted that Dr. Hodges's opinions restricted Plaintiff essentially to light to medium RFC, and the ALJ gave partial weight to Dr. Hodges's April 2011 assessment (Tr. 14). Based on the November 2012 MRI scans which revealed a new disc protrusion at L4-5 contacting the left L5 nerve root origin (Tr. 448-49), the ALJ reduced Plaintiff's RFC to sedentary work with additional nonexertional limitations and provided a sit or stand option (Tr. 14). As Defendant points out, Plaintiff does not appear to contest the ALJ's evaluation of, or weight assigned to, Dr. Hodges's April 2011 opinion.

In August 2013, after having last seen Plaintiff in November 2012, Dr. Hodges completed a lumbar spine RFC questionnaire at the request of Plaintiff's attorney (Tr. 14, 18, 477-80). Dr. Hodges noted that he initially saw Plaintiff monthly and that he currently saw her "prn," meaning when necessary (Tr. 477). He diagnosed Plaintiff with degenerative disc disease and chronic pain syndrome and he opined that her prognosis was "fair" (Tr. 14, 477). Positive objective signs included reduced range of motion along with generalized tenderness (Tr. 14, 478). Dr. Hodges indicated that emotional factors also contributed to Plaintiff's symptoms and functional limitations but her pain and other symptoms would rarely be severe enough to interfere with the attention and concentration needed to perform simple work tasks (Tr. 14-15, 478).

In describing her functional limitations, Dr. Hodges opined Plaintiff could walk two to three city blocks without rest or severe pain and, during an eight-hour workday, Plaintiff could sit or stand for 30 minutes at a time (but he did not indicate the total amount of time Plaintiff could sit) and could stand or walk for about four hours (Tr. 15, 478-79). He further opined that Plaintiff would need to walk around for five to 10 minutes every hour, be able to alternate positions at will, be able to take unscheduled breaks during the day, and would not need to

23

elevate her legs or use an assistive device (Tr. 15, 479). Dr. Hodges opined that Plaintiff could lift or carry up to 10 pounds rarely and less than 10 pounds occasionally (Tr. 15, 479). She could twist and climb stairs occasionally and should rarely stoop, crouch, squat, or climb ladders (Tr. 15, 479). Plaintiff had no significant limitations with reaching, handling, or fingering (Tr. 15, 480). Additionally, Dr. Hodges estimated that Plaintiff would likely be absent from work as a result of her impairments about three days a month (Tr. 15, 480). He stated that his description of her symptoms and limitations in the questionnaire applied to the earliest date that he first saw Plaintiff (Tr. 480).

In evaluating Dr. Hodges's opinions, the ALJ discussed that the only support for Dr. Hodges's assessment was his diagnoses of degenerative disc disease and chronic pain syndrome, that he did not include specific findings as to the severity of Plaintiff's pain and symptoms, and that his 2013 opinion consisted of a check mark form without any reference to the objective medical evidence (Tr. 15). As previously discussed, a diagnosis does not indicate the severity or functional limitations of the condition. *See Higgs*, 880 F.2d at 863 ("The mere diagnosis . . . says nothing about the severity of the condition."). The ALJ also found that Dr. Hodges's August 2013 assessment was contradicted by Dr. Hodges's April 2011 assessment, by Dr. Hodges's own objective findings, and by Plaintiff's most recent treatment notes from 2014 (Tr. 15). These were good reasons for not giving controlling weight to Dr. Hodges's opinions. *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (finding substantial evidence supported the ALJ's decision to give less weight to the physician's opinion because it conflicted with the treating physician's findings, it appeared to be based primarily on the claimant's subjective complaints, and it was contradicted by other evidence in the record).

Upon not giving controlling weight to Dr. Hodges's opinion, the ALJ applied regulatory factors and provided several good reasons for the partial weight he afforded to Dr. Hodges's

24

opinions (Tr. 15). The ALJ explained that Dr. Hodges had not examined Plaintiff in 10 months, that Dr. Hodges's only support for the assessment was a list of diagnoses without any specific findings indicating severity, that Dr. Hodges's August 2013 opinion was contradicted by his April 2011 assessment, that Dr. Hodges opined on non-medical matters outside the scope of his expertise when he stated that Plaintiff would likely miss three days of work each month, that Dr. Hodges's opinion was inconsistent with Plaintiff's most recent treatment notes in 2014 which did not indicate severe or intractable back or leg pain, and that Dr. Hodges's opinion consisted of a check mark form without any reference to objective medical evidence (Tr. 15). The ALJ explained that he granted Dr. Hodges's August 2013 assessment partial weight because of the November 2012 MRI scan which indicated new degenerative disc disease of the lumbar spine (Tr. 15, 448-49).

The ALJ's analysis for discounting the weight given to Dr. Hodges's opinions satisfies the regulatory requirements because it is "supported by the evidence in the case record and [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Court is able to conduct a meaningful review of the ALJ's application of the treating physician rule. Contrary to Plaintiff's arguments, the ALJ applied the treating physician rule and explained several good reasons or regulatory factors for affording Dr. Hodges's opinion only partial weight.

Plaintiff argues that the ALJ erred by not mentioning Plaintiff's lengthy treatment history with Dr. Hodges. From the ALJ's opinion, it is clear that the ALJ considered Dr. Hodges's treatment relationship with Plaintiff in evaluating Dr. Hodges's opinion. The ALJ acknowledged that Dr. Hodges was Plaintiff's treating orthopedist (Tr. 15), that Plaintiff was under his care for neck and back problems from a job-related injury in 2006, and that she had fusion surgery in

25

December 2010 (Tr. 17). The ALJ further noted that at the time of Dr. Hodges's August 2013 assessment he had not seen Plaintiff in 10 months (Tr. 15), and he considered Dr. Hodges's April 2011 assessment which was before her disability onset date. While the ALJ did not specifically discuss the length of Dr. Hodges's treating relationship with Plaintiff, it is clear from his opinion that it was considered when evaluating Dr. Hodges's opinion as Plaintiff's treating physician. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider [the length of the treatment relationship and the frequency of examination], they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.").

Plaintiff further argues that the ALJ erred by finding that Dr. Hodges's opinion on non-medical matters was outside the scope of his expertise when Dr. Hodges assessed that Plaintiff would miss three days of work each month. Plaintiff relies on *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1161 (D. Kan. 2011), to support her position that the number of monthly absences is a medical opinion. In *Fuller*, the court determined SSR 96-5p, requires that a physician's opinion regarding disability or any issue reserved to the Commissioner may not be given controlling weight or special significance but must be considered and weighed. 766 F. Supp. 2d at 1161; *see also* SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work,' or make similar statements of opinions. . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). In *Fuller*, the court recognized that the doctor's opinion was on an issue reserved to the Commissioner but remanded the case because

26

the ALJ had not properly considered the doctor's opinion and whether it was supported by the record. Here, while the ALJ found Dr. Hodges's opinion that Plaintiff would be unable to work three days a month was an opinion on a non-medical matter, the ALJ did not disregard Dr. Hodges's opinion on that basis but rather considered and weighed Dr. Hodges's opinion based on the regulatory factors and ultimately provided good reasons for giving Dr. Hodges's opinion partial weight.

Plaintiff argues that the ALJ erred by completely rejecting Dr. Hodges's assessment that Plaintiff's pain and other symptoms would "frequently" interfere with her ability to perform job related functions [Doc. 18 at Page ID # 611]. The ALJ, however, did not completely reject Dr. Hodges's opinions, but rather the ALJ discussed and acknowledged that Dr. Hodges opined in his August 2013 assessment that Plaintiff's pain and other symptoms would "rarely" interfere with her attention and concentration needed to perform even simple work tasks (Tr. 15, 478). Thus, Dr. Hodges's opinion is consistent with the restriction for only simple, routine repetitive tasks that the ALJ included in Plaintiff's RFC determination.

Plaintiff contends that it is unusual for an ALJ to rely on case law in rejecting a treating physician's opinion, but provides no authority which would indicate it is error to do so. The ALJ merely noted that Dr. Hodges's 2013 assessment consisted of a series of circles and checkmarks on an attorney-provided form with no reference to supporting objective medical evidence and noted some case law which disfavors such an approach. Whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques is just one factor that the ALJ may consider in determining the weight to assign to medical opinions. *See Ellars v. Comm'r of Soc. Sec.*, No. 15-4039, 2016 WL 2610234, at *2 (6th Cir. May 6, 2016) (finding the ALJ properly gave a check-box form little weight when the physician provided conclusory opinions with little to no explanation for the restrictions entered on the form). The ALJ in this

27

case appropriately considered whether Dr. Hodges's 2013 assessment was well supported by medically acceptable clinical and laboratory diagnostic techniques in determining the weight to assign his medical opinions.

Accordingly, the Court **FINDS** that the ALJ properly applied the treating physician rule and explained several good reasons for the partial weight that he gave to Dr. Hodges's opinions.

### 3.    Substantial Evidence Supports the ALJ's RFC Determination

In making his RFC determination, the ALJ stated:

> Due to the nature and severity of the claimant's impairments, considered singly and in combination, I find that the claimant could perform a maximum residual functional capacity of sedentary work activity with additional limitations as described in paragraph 5 above.  In making this finding, I have relied heavily upon the medical record of evidence, the assessment of the independent psychological consultant, the residual functional capacity assessment prepared by the State agency's consultant as modified by the claimant's subjective statements to the extent deemed credible, and my own thorough review of the record as a whole.

(Tr. 19).

Plaintiff contends that the ALJ is not clear about the range of sedentary work Plaintiff can perform and he failed to take into consideration Plaintiff's postural limitations that were demonstrated in the record.  Plaintiff further contends that the record establishes that Plaintiff cannot sit for long periods of time without experiencing severe pain and she needs to alternate positions between sitting and standing to relieve the pain.  As Defendant correctly argues, the ALJ need only include in his RFC determination those limitations that the ALJ finds to be consistent with the record as a whole.  *See Hernandez v. Comm'r of Soc. Sec.*, No. 4:13-CV-67, 2015 WL 1566144, at *8 (E.D. Tenn. Apr. 7, 2015) ("As previously noted, the RFC determination is not a medical assessment but, instead, is an evaluation made by the ALJ, and the RFC finding is based on all evidence in the record, not merely on the medical evidence.");

*Woods v. Comm'r of Soc. Sec.*, No. 4:11-CV-28, 2012 WL 3548033, at *8 (E.D. Tenn. Mar. 16, 2012), *report and recommendation adopted sub nom. Woods v. Astrue*, No. 4:11-CV-28, 2012 WL 3548121 (E.D. Tenn. Aug. 15, 2012) ("The ALJ reasonably adopted some or most of Dr. Allison's opinion because it was generally consistent with the record, but did not include this limitation, which was not well-established in the record, in his RFC determination.").

While the ALJ gave Dr. Hodges's opinions partial weight, the ALJ gave great weight to the opinions of Kathryn Galbraith, Ph.D., the state agency's independent psychological consultative examiner. On March 4, 2013, Dr. Galbraith performed an independent psychological exam of Plaintiff and diagnosed her with anxiety disorder, not otherwise specified (Tr. 16, 464-68). Dr. Galbraith opined that Plaintiff had average range of intellectual functioning and showed evidence of a moderate impairment in her short term memory and social relating, no evidence of impairment in her ability to sustain concentration or in her long term and remote memory functioning, and mild impairment in her ability to adapt to change (Tr. 468). Dr. Galbraith further opined that Plaintiff appeared able to follow both written and verbal instructions and appeared to have a stable work history and the ability to handle finances (Tr. 16, 468). In affording Dr. Galbraith's opinions great weight, the ALJ found them to be consistent with recent medical records about Plaintiff's treatment for anxiety secondary to her chronic pain (Tr. 16, 531-37). The ALJ also found Dr. Galbraith's assessment of moderate limitations in social interaction to be consistent with Plaintiff's function reports which indicated little social activity (Tr. 16, 215-16, 244-45).

The ALJ also considered the opinions of State agency medical consultant Deborah Webster-Clair, M.D., that Plaintiff could perform light exertional activity lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently (Tr. 16, 517, 526). Dr. Webster-Clair further opined that Plaintiff could stand or walk with normal breaks for a total of four hours out

of an eight-hour workday and sit with normal breaks for a total of about six hours in an eight-hour workday (Tr. 16, 517, 526). She opined that Plaintiff needed no limitations on pushing or pulling, including operation of hand or foot controls, other than as described for lifting and carrying; could occasionally climb ladders, ropes, scaffolds, ramps and stairs; and could perform other postural activity frequently (Tr. 16, 517-18, 526-27). Plaintiff's gross manipulation of the right hand was limited, and environmental limitations included avoidance of concentrated exposure to vibrations (Tr. 16, 518, 527).

Finding Dr. Webster's assessment consistent with Plaintiff's history of mild degenerative disc disease, the ALJ gave partial weight to Dr. Webster-Clair's assessment of light exertional activity with frequent handling of the right upper extremity and avoidance of vibrations (Tr. 17). However, based on more recent MRI scans showing progress of degenerative disc disease to the lumbar spine, in combination with Plaintiff's cervicogenic headaches and anxiety, the ALJ reduced Plaintiff's RFC to sedentary activity with additional nonexertional limitations (Tr. 17). The Court **FINDS** that the ALJ reviewed all of the relevant evidence in the record, decided which medical opinions to credit, and determined Plaintiff's RFC as sedentary with the additional limitations set forth in the ALJ's opinion.

The ALJ properly evaluated Plaintiff's subjective complaints and the medical opinions, and the Court **FINDS** that there is substantial evidence in the record to support the ALJ's RFC determination. *See Smith*, 99 F.3d at 782.

V.    **CONCLUSION**

For the foregoing reasons,

1)    Plaintiff's motion for judgment on the administrative record [Doc. 17] is

      **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 19] is **GRANTED**;

and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE